UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ANTOINE WILLIAMS,

              Plaintiff,                                    **MEMORANDUM AND ORDER**

  - against -                                         19-CV-3687 (RRM)

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
-------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Antoine Williams brings this action against the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of the Commissioner's determination that he was not disabled and, therefore, not eligible for Supplemental Security Income ("SSI") beginning on February 4, 2017. The Commissioner now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Notice of Motion (Doc. No. 13)). For the reasons set forth below, the Commissioner's motion is granted.

## BACKGROUND

      Williams was born on June 1, 1978, and was 38 years old at the time he filed his application for SSI. (Certified Administrative Record ("Tr.") (Doc. No. 15) 168, 185.)[1] Williams has a GED certification and past work experience as a factory worker and farm laborer. (Tr. 38–39, 190.) More specifically, Williams was employed by Acoustical Products of Easton, Inc., from 2012 to 2014. (Tr. 179.) In the summer of 2015, he worked for a few months picking cotton in Charleston, MS, and from 2015 to 2016, he worked for Washington Inventory Service, a corporation located in San Diego, CA. (Tr. 179–180.) He did not work in 2017. (Tr. 180.)

---

[1] Page numbers preceded by "Tr." denote citations to the Certified Administrative Record and use the original pagination. All other page numbers refer to ECF pagination.

Evidence Prior to Alleged Onset Date

Williams had a history of treatment for lower gastrointestinal issues, with non-surgical treatment for a small bowel obstruction in July 2013, surgery to relieve a small bowel obstruction in October 2013, complaints of abdominal pain and constipation in October 2014, and diagnoses of pneumonia, rib pain, and gastritis (or stomach inflammation) in September 2015.  (Tr. 281–283, 287–292, 305–309, 324–329, 336–338.)  The Certified Administrative Record contains no indication that Williams sought treatment for gastrointestinal issues after September 2015.

Evidence On or After the Alleged Onset Date

On February 4, 2017, Williams sustained traumatic injuries to his abdomen and fractures in both legs after a motor vehicle accident.  (Tr. 299–301, 353–354, 358–359, 362–370.)  Williams underwent surgical correction of his lower extremity fractures on February 5, 2017, with fixation of a right tibia fracture and external fixation of a left open pilon (distal tibia at the ankle joint) fracture.  (Tr. 382–384.)  On February 10, 2017, an additional surgery was performed to address right metatarsal fractures and revision of the fixation for the left pilon fracture from external to internal.  (Tr. 405–409.)  At that time, Clay Spitler, M.D., the treating surgeon, predicted that Williams would be "non-weightbearing for a total of 10 weeks on his right lower extremity" and was non-weightbearing in the left lower extremity.  (Tr. 407, 409.)  On February 20, 2017, Williams was discharged from the University of Mississippi Medical Center with a restriction to no weight bearing with the lower extremities.  (Tr. 411–415.)

Williams returned for follow-up care on March 10, 2017, and was noted to be healing as expected with no complications.  (Tr. 418–419.)  Williams was noted to be doing well at his March 24, 2017, follow-up appointment, at which time the sutures on his left ankle were removed.  (Tr. 423–24.)  Williams continued to be on non-weight bearing status bilaterally.  (Tr.

2

423.) At an April 28, 2017 follow-up appointment, Williams was noted to be healing well, with diffuse swelling in both ankles and feet. (Tr. 425.)

Williams applied for SSI on March 27, 2017, alleging disability since February 4, 2017 due to back problems, ulcers, "paranoia," and injuries to his legs and feet. (Tr. 168–174, 189; *see* Tr. 60 (showing effective filing date).) Williams's claim was denied on April 25, 2017, (Tr. 68–72), and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 86–88.)

In a function report dated April 27, 2017, Williams stated that he lived with his mother, and described his daily activities as washing, eating, watching television, playing video games, taking medicine, and taking naps. (Tr. 205.) Williams stated that he was unable to dress himself, prepare meals, bathe, or take care of personal hygiene on his own. (Tr. 206.) He stated that the pain from his injuries interrupted his sleep and that he could do no chores other than folding laundry. (Tr. 208.) Williams also stated that he could not walk, squat, bend, stand, kneel, or climb stairs, and that "reaching [and] sitting cause[d] strain on [his] legs." (Tr. 209.) Williams stated that he had a short attention span and was currently using a wheelchair to get around because his "legs are broke." (Tr. 208–210.) Williams appears to have submitted the identical functional report on May 1, 2017. (*See* Tr. 226–233.)

In two identical third-party function reports dated April 27, 2017, and May 1, 2017, Williams's mother, Ora Lee Williams, repeats almost verbatim the limitations contained in Williams's function report. Ms. Williams reported that her son was unable to dress himself, prepare meals, bathe, use the toilet, or take care of personal hygiene on his own. (Tr. 198, 219.) She stated that the pain from his injuries "make it hard for him to get rest" and that he folds laundry but does no other chores. (Tr. 200, 219–220.) Further, she stated that he could not walk, squat, bend, stand, kneel, or climb stairs, and "reaching and sitting for too long causes painful

3

strain on his legs." (Tr. 202, 223.) Ms. Williams stated that Williams has a short attention span, cannot go out by himself, and is confined to a wheelchair since "both his legs are broke." (Tr. 201–202, 222–223.)

Disability Adjudicator Jessica Franklin, in consultation with non-examining state agency medical consultant Glenn James, M.D., reviewed Williams's medical treatment records and submitted a case analysis on April 26, 2017, opining that Williams was not disabled because "a medically determinable impairment has not been established," though noting that the material available to review was incomplete. (Tr. 54–58.) Disability Adjudicator Kathy Belk, in consultation with non-examining state agency medical consultant Carol Kossman, M.D., reviewed Williams's treatment records and function reports, and opined in her July 28, 2017, case analysis that Williams was not disabled because his physical impairments were anticipated to resolve to non-severe within 12 months of onset. (Tr. 61–67.)

On September 27, 2017, Williams started physical therapy at Merit Health Northwest Mississippi ("MHNM"). (Tr. 485–489.) MHNM staff noted that Williams had not had physical therapy in the last 60 days, had no weight-bearing restrictions, and was using a rolling walker for ambulation. (Tr. 485.) Williams reported that the swelling had resolved but he continued to have ankle pain. (Tr. 485, 487.)

On November 1, 2017, Williams reported "doing ok" to MHNM staff and performed squats, lunges, heel raises, and hamstring curls during therapy. (Tr. 469.) On November 6, Williams reported doing exercises at home, including the exercises from his last therapy sessions. (Tr. 470.) Williams reported increased left foot pain on November 7, 2017, but stated that his feet were feeling better at the November 13 therapy session. (Tr. 471–472.) Williams walked on the treadmill at an 0.7 mph pace with no uphill elevation. (Tr. 472.) On November

4

15, 2017, Williams was walking better and ambulated on a treadmill at a 1.3 mph pace with no uphill elevation. (Tr. 473.) MHNM staff noted shortened plantar fascia under each arch after Williams reported feeling "a hard knot under both feet." (*Id*.) On November 29, 2017, MHNM staff noted that Williams appeared for therapy with a cane and reported that he had been walking better. (Tr. 474.) On evaluation, Williams was noted to be able to independently walk with a cane, but with an abnormal gait due to walking with his feet supinated (turned to one side). (Tr. 476.) On December 24, 2017, Williams reported to MHNM staff, according to their notes, that he had been "walking better" and "only the medial malleolus [bony prominence] of the left ankle hurts today." (Tr. 467.) Williams walked on a treadmill with 7% elevation at 1.4 mph. (*Id*.)

Administrative Hearing

On July 30, 2018, ALJ Shannon Mashburn held a hearing at which Williams, represented by counsel, appeared and testified. (Tr. 32–53.) Although the Administrative Record only includes record of two bowel surgeries, Williams testified that he had undergone five surgeries for bowel obstructions, most recently in 2013. (Tr. 39.) He said that he had bowel movements once a day, and that they were painful. (Tr. 39–40.) He stated that he experienced abdominal pain throughout the day, and described it as being like a knot in his stomach. (Tr. 40–41.)

Regarding his leg injuries, Williams testified that his left leg was in worse condition than his right, and continued to be swollen and painful. (Tr. 41.) He claimed that he spent at least two hours per day with his legs elevated. (Tr. 46–47.) He further claimed that he had been using a cane since discontinuing use of a walker, which he had been using until approximately one month prior to the hearing. (Tr. 42.) Williams testified that he took only over-the-counter pain medications. (Tr. 42.) Williams testified that he could stand for 15 or 20 minutes at a time, could walk as far as half of a football field, and could not bend, stoop, or squat. (Tr. 42–43.) He

5

stated that he lived with his mother and that she helped him bathe and take care of household chores. (Tr. 44–46.) He stated that he could dress himself and he could fold laundry if his mother brought it to him. (Tr. 44, 47.) Williams testified that a normal day for him was spent watching television, taking medications, drawing, and eating. (*Id*.) Williams stated that he needed assistance with the steps to get in and out of his house. (Tr. 46.)

Vocational Expert ("VE") Debbie Ann Rose, Ph.D., also appeared and testified. (*Id*.) Rose testified that Williams's past work included a job as a machine operator (Tr. 49–50), and that an individual who was limited to sedentary exertion and could occasionally crouch, kneel, crawl, balance, or climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently stoop; never be exposed to heights or dangerous machinery; and use a cane for ambulation could not perform Williams's past work. (Tr. 50–51.) Rose testified that such an individual could perform the following sedentary unskilled jobs described in the Dictionary of Occupational Titles ("DOT"): Surveillance System Monitor, DOT code 379.367-010; Ticket Checker, DOT code 219.587-010; and Information Clerk, DOT code 237.367-022. (Tr. 51.) Rose further testified that an individual with all of these limitations who also needed to elevate the feet for approximately 30 minutes every hour would not be able to perform any of these jobs and would be unable to perform any other kind of work "without special accommodations." (Tr. 51–52.)

ALJ Decision

On October 2, 2018, the ALJ issued a decision finding that Williams was not disabled as defined under the Act and denied his application for SSI. (Tr. 17–27.) Following the five-step sequential evaluation for adjudicating Social Security disability claims (20 CFR 404.1520(a) and 416.920(a)), the ALJ reviewed the evidence of record, and found at step one that Williams had not engaged in substantial gainful activity since March 27, 2017, the application date. (Tr. 19.)

At step two, the ALJ found that Williams had the following severe impairments: left pilon fracture (status post reconstruction and fixation surgery) and right tibial shaft fracture (status post reconstruction and fixation surgery).  The ALJ found that the record was devoid of evidence that demonstrated residual significant functional limitations caused by Williams's history of small bowel obstruction, nor were there any treatment records for this condition during the time period at issue, and therefore Williams had failed to show that the impairment was severe under the meaning of 20 CFR 404.1421 and 416.921.  (Tr. 20.)

At step three, the ALJ determined that Williams did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).  (*Id*.)  Specifically, Williams's impairments did not meet or medically equal Listing 1.02 or 1.03 because the evidence in the record did not demonstrate an inability to ambulate effectively as defined in Section 1.00B2b.  (Tr. 21.)  Rather, the record demonstrates that after his injuries and surgery in February 2017, Williams improved with physical therapy and was able to walk with the use of a cane by November 2017, and could walk even better by December 2017, indicating a return to effective ambulation within nine months.  (Tr. 21–22.)

Next, the ALJ determined that after careful consideration of the entire record that Williams had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 416.967(a), with the following limitations: he could only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights or dangerous machinery; and could be expected to use a cane to ambulate throughout the workplace while carrying small objects in the free hand.  (Tr. 22.)  In making this determination, the ALJ found that Williams's allegations and hearing testimony regarding the extent of his limitations

7

were not consistent with the record evidence as a whole. (Tr. 23.) Williams's testimony that he was off task due to pain and that he needed to elevate his feet while sitting were unsupported by the record. (*Id.*) Further, Williams had not sought any medical care after December 2017, and had not been assigned any work-related restrictions. (Tr. 24.) The ALJ found unpersuasive the opinions of disability adjudicators Franklin and Belk that Williams was not disabled because his conditions had resolved to be non-severe within twelve months, because Williams reported impairment that appeared to last "longer than anticipated." (Tr. 25.) Nevertheless, the ALJ also found Williams's mother's third-party function report to be unpersuasive as it was not supported by medical record evidence. (*Id.*) The ALJ pointed to Williams's treatment records from both before and after the alleged onset date as support for her RFC determination. (*Id.*)

At step four, the ALJ determined that Williams is unable to perform any past relevant work. (*Id.*) At step five, the ALJ found that considering Williams's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that he could perform, including occupations such as surveillance system monitor, ticket checker, and information clerk. (Tr. 26.) Accordingly the ALJ found that based on the supplemental security income application filed on March 27, 2017, Williams was not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. 27.)

Williams filed a Request for Review (Tr. 163), which the Appeals Council denied on April 25, 2019, making the ALJ's decision the Commissioner's final decision. (Tr. 1–4.)

I.     **The Instant Action**

Williams filed the instant action on June 19, 2019, challenging the Commissioner's determination that he was not disabled under the Act. The Commissioner now moves for judgment on the pleadings. In his Memorandum of Law, the Commissioner argues that the ALJ

correctly found that Williams's impairments did not meet or medically equal a listed impairment because Williams was able to ambulate effectively as of November 2017. (Memorandum of Law ("Mem.") (Doc. No. 14) at 11.) The Commissioner also argues that the ALJ's RFC determination was supported by substantial evidence in the record, including Williams's physical therapy reports and his testimony that his pain was controlled by over-the-counter medication. (*Id*. at 12–13.) Further, the Commissioner states that the ALJ was correct to find that Williams's abdominal pain was not a severe impairment and did not support Williams's testimony regarding his pain because Williams had sought no diagnosis or treatment for his abdominal symptoms during the relevant time period. (*Id*. at 14.) Finally, the Commissioner argues that the ALJ correctly found that Williams retained the ability to perform jobs that exist in significant numbers in the national economy. (*Id*. at 15.)

## STANDARD OF REVIEW

A final determination of the Commissioner of Social Security upon an application for SSI benefits is subject to judicial review as provided in 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3). A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *see Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

"Substantial evidence" connotes "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

9

*Perales*, 402 U.S. 389, 401 (1971); *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). "In determining whether substantial evidence supports a finding of the Secretary [now, Commissioner], the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such a finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." *Rivera v. Sullivan*, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991). The "substantial evidence" test applies only to the Commissioner's factual determinations. Similar deference is not accorded to the Commissioner's legal conclusions or to the agency's compliance with applicable procedures mandated by statute or regulation. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)

"Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, where application of the correct legal principles to the record could lead only to the same conclusion reached by the Commissioner, there is no need to remand for agency reconsideration. *Zabala v. Ast*rue, 595 F.3d 402, 409 (2d Cir. 2010).

Eligibility for SSI

To be eligible for SSI, an individual must be blind, aged, or disabled and fall within certain income and resource limits. *See* 42 U.S.C. §§ 1381, 1382(a). An adult is "considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The physical or mental impairment or impairments must

10

be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . . 42 U.S.C. § 1382c(a)(3)(B). The term, "work which exists in the national economy," is defined as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." (*Id.*)

In deciding whether a claimant is disabled, the Commissioner is required by the Social Security regulations to use the five-step framework set forth in 20 CFR 416.920(a)(4). "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act and bears the burden of proving his or her case at steps one through four of the sequential five-step framework." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations and quotations omitted). Nonetheless, "[b]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* (quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)).

## DISCUSSION

### I. The Listings

The Listings "streamline[] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). It is the claimant's burden to show that all the requirements of a listed impairment are met. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ determined at step two that Williams's lower extremity injuries did not meet or medically equal the criteria of Listing 1.02, which addresses major joint dysfunction, or Listing 1.03, which addresses reconstructive surgery or surgical arthrodesis of a major weight-bearing

11

joint. (Tr. 20–22.) Listing 1.02 classifies an individual as disabled if he or she is experiencing involvement of a weight-bearing joint that results in the inability to ambulate effectively, and Listing 1.03 classifies an individual as disabled if he or she undergoes reconstructive surgery and the ability to ambulate effectively is not restored within 12 months of onset. 20 CFR Pt. 404, Subpt. P, App. 1, §§ 1.02, 1.03. The "inability to ambulate effectively" for purposes of the Listings is defined as:

> an extreme limitation in the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 CFR Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1).

Williams suffered his injuries in February 2017, and was able to walk independently with the use of a cane at his December 2017 physical therapy appointment. (Tr. 21, 474, 476.) He was therefore unable to ambulate effectively for, at most, 10 months. The effects of Williams's February 2017 injuries thus did not persist at a disabling level for a continuous time period sufficient to satisfy the Act's twelve-month duration requirement. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 CFR 416.909. Accordingly, the ALJ's properly found that Williams had failed to demonstrate that his impairments met or medically equaled either Listing 1.02 or 1.03.

II.     The RFC Determination

"Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, [s]he [is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). This is because the ALJ's RFC assessment is not a medical opinion, but an

12

administrative assessment of what a claimant can do based on the medical and non-medical evidence of record. 20 CFR 416.945(a); Social Security Ruling 96-8p, 1996 WL 374184, at *3. The Court should not second-guess the ALJ's findings of fact in its substantial evidence review under 42 U.S.C. § 405(g), even if it would have weighed the evidence differently. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (presence of substantial evidence supporting a different conclusion does not establish reversible error).

Here, the ALJ found, upon review of the entire record, that Williams had the RFC to perform sedentary work as defined in 20 CFR 416.967(a), with the following limitations: he could only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights or dangerous machinery; and could be expected to use a cane to ambulate throughout the workplace while carrying small objects in the free hand. The ALJ came to this determination by weighing conflicting evidence: Williams's treatment records showed that Williams was doing squats, lunges, heel raises, and walking with a cane at his physical therapy appointments in November 2017, and reported in December 2017 that he was "walking better"; in contrast, Williams's function reports and his mother's third-party function reports from earlier in 2017 alleged that Williams was unable to walk, squat, kneel, bathe himself, or concentrate due to pain, and had to elevate his legs when seated due to swelling. The ALJ also considered the opinions of State consultative examiners, both of whom opined that Williams was not disabled, and determined that these opinions from the middle of 2017 were unpersuasive given the persistence of Williams's symptoms. The ALJ also noted that Williams had not sought diagnosis or treatment for abdominal pain during the relevant period, had not sought treatment for his impairments since December 2017, and testified that he managed his pain using over-the-counter medication. In formulating the RFC, the ALJ appropriately weighed this conflicting

evidence, crediting Williams's testimony to the extent that he described a more-difficult-than-expected recovery and finding unpersuasive the consultative examiners' assessments of non-severity. There is substantial evidence in the record to support the ALJ's RFC determination.

III.     Reliance on Vocational Expert Testimony

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion,' and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal brackets and citations omitted). Here, the ALJ relied on VE testimony to find that someone with Williams's educational background, work experience, age, and RFC could perform jobs that exist in significant numbers in the national economy. VE Rose identified three occupations, totaling 194,000 jobs in the national economy, which could be performed by someone with Williams's RFC and vocational history. This satisfied the Commissioner's step-five burden. Accordingly, the ALJ's determination at step five was supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is granted. The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order, to mail of copy of the judgment and this Memorandum and Order to Williams, to note that mailing on the docket sheet, and to close this case.

SO ORDERED.

Dated:  Brooklyn, New York
         January 11, 2021                         *Roslynn R. Mauskopf*
                                                  _____
                                                  ROSLYNN R. MAUSKOPF
                                                  Chief United States District Judge